IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TONY VON CARRUTHERS,              )
                                  )
              Petitioner,         )
                                  )
V.                                )        No. 05-2149-SHM
                                  )
DAVID MILLS, Warden,              )
                                  )
              Respondent.         )

---

ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER DENYING PENDING MOTIONS
ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On February 16, 2005, Petitioner Tony Von Carruthers filed a pro se habeas corpus petition, pursuant to 28 U.S.C. § 2254, along with an application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915.  Respondent subsequently moved to dismiss the petition, arguing that Petitioner has not yet exhausted his state court remedies.  In the intervening months, Petitioner has filed numerous pro se motions in furtherance of his habeas petition.[1]

---

[1]    See Carruthers v. Mills, no. 05-2149, dkt. no. 7, "Writ of Habeas Corpus Ad Testificandum For Criminal Warrants Against Ex-Prosecutor Phillip Gerald Harris And Asst. D.A. Robert J. Carter Jr. [sic]"; no. 8, "Motion For The Appointment Of Counsel"; no. 9, "Motion For Continuance To File Response to Respondent's Motion To Dismiss"; no. 11, "28 U.S.C. § 2250 Indigent Petitioner Entitled To Documents Without Cost - In Forma Pauperis Statis [sic]"; no. 12, "Motion To Stay State Court Proceedings Pursuant to 28 U.S.C. § 2251 Stay of State Ruling Post-Conviction Evidentiary Ruling P-# 25948"; no. 13, "Motion To Take A Sworn Video Deposition of Cedric

The motion to proceed in forma pauperis and all motions referred to in fn. 1, supra, are DENIED as moot because the petition is DISMISSED without the need for an evidentiary hearing.

## I.   BACKGROUND

In April, 1996, a Shelby County, Tennessee, jury convicted Petitioner and his co-defendant, James Montgomery, on three counts of premeditated first-degree murder and imposed a sentence of death on each count.   State v. Carruthers, 35 S.W.3d 516, 523 (Tenn. 2000).   Petitioner's convictions and sentences were affirmed on appeal, while his co-defendant's were reversed because he was denied a fair trial when the trial court refused to grant the co-defendant's request for a severance.   Id.   Petitioner subsequently petitioned for post-conviction relief on the basis of ineffective assistance of counsel.   Carruthers v. State, 145 S.W.3d 85, 88 (Tenn. Crim. App. 2003).   After an interlocutory order of the post-conviction court was reversed and remanded by the Tennessee Court of Criminal Appeals, see id., it appears to the Court that

---

Maze and a Federal Investigation Into Why Witness Testimony Was Not Presented in Deposition of State Witness Jimmy Lee Maze.   Pursuant to 28 U.S.C. § 2246 Evidence; & Deposition;"; no. 15, "Motion [To] Compel Tennessee Department of Corrections to Allow Petitioner Access to the District Court Clerk and Access to the Telephone to Contact Witnesses"; no. 17, "Motion to Take a Sworn Deposition of Juror #127 Deborah Archer (the Plant) and Juror #120 (the Plant) Pursuant to F.R.C.P. 28 U.S.C. § 2246 Evidence; Deposition;"; no. 18, "Motion For Appointment of Counsel 28 U.S.C. § 2261 Requirement of Rule of Court, or Statute; Procedure for Appointment."; and no. 19, "Motion to Take Oral Testimony into Evidence D.N.A. "Experts" By The "Innocence Project" Directors Attorney Barry Scheck and Attorney Peter J. Neufeld".

Petitioner's post-conviction petition remains pending in the Tennessee state courts.  <u>See</u> <u>Carruthers v. State</u>, no. W2006-00376-CCA-R3-PD (not. of app. from Shelby County Criminal Court filed with Tennessee Court of Criminal Appeals on Feb. 15, 2006).  Thus, Petitioner is actively pursuing an ongoing state-court collateral challenge to his convictions and sentences.

**II.   PETITIONER'S FEDERAL HABEAS CLAIMS**

In the instant petition, Carruthers raises the following claims:

A.    that he was not afforded a "<u>Westbrook</u> inquiry" prior to the trial judge forcing him to proceed <u>pro</u> <u>se</u> at his capital trial, thus violating his due process rights;

B.    that he was denied a fair trial because of jury tampering where allegedly two jurors were "planted" and provided access to "extraneous prejudicial information" during his trial;

C.    that he suffered judicial misconduct because of the presiding judge's failure to grant a mistrial after he allegedly became aware of a juror's alleged bias toward Petitioner, and thereafter allegedly instructed Petitioner's appellate counsel not to raise the issue on direct appeal; and

D.    that he suffered prosecutorial misconduct because the prosecutor allegedly suborned perjury from various witnesses before both the grand and petit juries.

The above four claims are set forth in the four spaces available for a petitioner utilizing the standard-form "fill in the blank" § 2254 petition provided to <u>pro</u> <u>se</u> habeas applicants.   In Petitioner's supporting memorandum, he elaborates on the above claims and appears to raise the following two additional claims:

3

E.     that he was denied his Sixth Amendment right to counsel; and

F.     that the prosecution failed to disclose certain allegedly exculpatory evidence consisting of a "D.N.A. comparison with Petitioner," thus denying him the opportunity to prove his innocence and violating his Fourteenth Amendment due process rights pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Memorandum of Law In Support of Petitioner Tony Carruthers' Writ of Habeas Corpus, R. 3 at 3. Thus, from all of the above, it appears that Petitioner raises six distinct claims in his federal habeas petition.

## III.  LEGAL STANDARDS APPLICABLE TO HABEAS PETITIONS

Twenty-eight U.S.C. § 2254 states, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unlesss it appears that-
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B)(i) there is an absence of available State corrective process; or
    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
    (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
. . .
(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Thus, as a matter of comity within the federal system, prior to seeking habeas corpus relief in the federal courts, the petitioner

must first exhaust the remedies available to him in the state courts.  See, e.g., Ex Parte Royall, 117 U.S. 241, 251 (1886). Exhaustion requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  This requires the federal habeas petitioner to seek discretionary review of his federal claims in the highest court of the state as a prerequisite to a finding of exhaustion.  Id.

The U.S. Supreme Court has previously held that the exhaustion rule requires "total exhaustion." Rose v. Lundy, 455 U.S. 509, 522 (1982).  Under such a regime, where a habeas petitioner presents a "mixed petition" containing both exhausted and unexhausted claims, the district court is required to dismiss the entire petition for failure to exhaust state remedies, thus allowing the prisoner to either seek exhaustion in the state courts or delete the unexhausted claims and resubmit the petition.  Id. at 520. However, with the passage of the AEDPA in 1996 and its addition of a one-year statute of limitations on the filing of federal habeas petitions, the "total exhaustion" rule of Lundy assumed a harsh and unforgiving aspect:

> As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy's* dismissal requirement, petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims.  If a petitioner files a timely but mixed

> petition in federal district court, and the district
> court dismisses it under *Lundy* after the limitations
> period has expired, this will likely mean the termination
> of any federal review.

Rhines v. Weber, 544 U.S. 269, 152 S.Ct. 1528, 1533 (2005).  The

petitioner filing a "mixed petition" risks such an outcome under

the "total exhaustion" rule because, while the one-year limitation

for habeas petitions is tolled during the pendency of any "properly

filed application for State post-conviction or other collateral

review," 28 U.S.C. § 2244(d)(2), it is not similarly tolled during

the pendency of a federal habeas petition.  Duncan v. Walker, 533

U.S. 167, 181-82 (2001).  Thus, under a "total exhaustion" regime,

where a "timely but mixed petition" is filed in the district court,

the petitioner is not protected from the running of the limitations

period though it may take the court many months to determine

whether the petition presents only exhausted claims.

To ameliorate the harsh effect of AEDPA's statute of

limitations on "mixed" petitions, courts have fashioned an

equitable remedy commonly referred to as "stay and abeyance."  See

e.g., Griffin v. Rogers, 399 F.3d 626, 631-32 (6th Cir. 2005).  In

short, "[u]nder this stay and abeyance procedure, courts retain

jurisdiction over the exhausted claims, dismiss the unexhausted

claims, and stay the habeas proceedings pending the complete

exhaustion of state remedies."  Id. at 632 (discussing Justice

Stevens' concurring opinion in Duncan, 533 U.S. at 183).  The Sixth

Circuit has limited the protection of "stay and abeyance" to a

habeas petitioner who:

> (1) has a mixed case of some exhausted and some
> unexhausted claims; (2) files a timely petition in
> federal court; and (3) thereafter pursues his unexhausted
> claims in state court within 30 days and refiles in
> federal court within 30 days after exhaustion.

Bolton v. Berghuis, 2006 WL 92845 (6th Cir. Jan. 13, 2006).  The

Supreme Court recently endorsed the "stay and abeyance" procedure.

See Rhines, 125 S.Ct. at 1535.  However, the Court also proscribed

the utilization of "stay and abeyance" in certain instances:

> Because granting a stay effectively excuses a
> petitioner's failure to present his claims first to the
> state courts, stay and abeyance is only appropriate when
> the district court determines there was good cause for
> the petitioner's failure to exhaust his claims first in
> state court.  Moreover, even if a petitioner had good
> cause for that failure, the district court would abuse
> its discretion if it were to grant him a stay when his
> unexhausted claims are plainly meritless.

Id.  Furthermore, district courts are instructed not to grant a

stay to a petitioner who deliberately "engages in abusive

litigation tactics or intentional delay."  Id.  If the district

court determines that "stay and abeyance" is inappropriate for a

mixed petition, "the court should allow the petitioner to delete

the unexhausted claims and to proceed with the exhausted claims if

dismissal of the entire petition would unreasonably impair the

petitioner's right to obtain federal relief."  Id.

**IV.  ANALYSIS**

The Court must first determine whether Petitioner raises any unexhausted claims.  Respondent asserts that Petitioner's habeas application should be dismissed for lack of exhaustion because it raises claims similar to those which remain pending in Petitioner's state court post-conviction proceedings, including claims of ineffective assistance, jury tampering, and prosecutorial misconduct.  Memorandum of Law In Support of Respondent's Motion to Dismiss, R. 6 at 1.  Indeed, only through Petitioner's assertion regarding the denial of his Sixth Amendment right to counsel,[2] does it appear that Petitioner raises any exhausted claim in the instant petition.[3]  Thus, it is apparent that the instant petition is, at best, "mixed" because state proceedings concerning some of the instant claims remain pending.

Petitioner does not contend that all of his claims are exhausted.  Rather, he asserts "that the exhaustion requirement is

---

[2]    See Memorandum of Law in Support of Petitioner Tony Carruthers' Writ of Habeas Corpus 28 U.S.C. § 2254 Manifest Injustice & Actual Innocence, R. 3 at 3 ("The denial of the 6th Amendment right to counsel was so fundamentally unfair it constituted a denial of due process, and a structural defect in the capitol [sic] trial in which Petitioner's life and liberty is at stake.").

[3]    The constitutional implications of the trial court's decision to force Petitioner to proceed pro se at his trial have been exhausted in the state courts.  The Tennessee Supreme Court's opinion affirming Petitioner's convictions and sentences discusses the issue of Petitioner's waiver and/or forfeiture of counsel in great detail.  See Carruthers, 35 S.W.3d at 533-50.

inapplicable and should not be required 'whenever it may be clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief.'" Response to Respondent's Motion to Dismiss, R. 10 at 2 (quoting Marino v. Ragen, 332 U.S. 561, 564 (1947)).  The only ground offered by Petitioner in support of the appropriateness of this Court considering his unexhausted claims is that the state court has unreasonably delayed his post-conviction proceedings and has never afforded him "meaningful review."  Response to Respondent's Motion to Dismiss, R. 10 at 5. To the contrary, Petitioner has received some "meaningful review" in his post-conviction proceedings, including a favorable ruling from the Tennessee Court of Criminal Appeals on the state's appeal of an interlocutory order of the post-conviction court.  See Carruthers, 145 S.W.3d at 96 (granting Petitioner leave to interview certain jurors concerning his juror misconduct and tampering claims).  Therefore, the Court finds that Petitioner has failed to establish that circumstances exist which render the state post-conviction process ineffective to protect his rights. Accordingly, Petitioner will not be excused from the exhaustion requirement.

Though the Court has determined that Petitioner has perhaps articulated one exhausted claim, the instant petition is not entitled to the "stay and abeyance" procedure discussed above. Petitioner cannot show "good cause" for his failure to exhaust his

claims in the state courts where state proceedings raising substantially identical claims remain pending. See Rhines, 125 S.Ct. at 1535. The running of the habeas statute of limitations is tolled while Petitioner's state post-conviction petition remains pending, 28 U.S.C. § 2244 (d)(2), and, therefore, has been tolled throughout the pendency of the instant petition. Rhines instructs that, where a "mixed" petition is not appropriate for "stay and abeyance," a court should dismiss the entire petition if it will not "unreasonably impair the petitioner's right to obtain federal relief." Id. Because the statute of limitations was tolled when Petitioner filed his parallel petition in this Court and remains tolled to this day, Petitioner will suffer no prejudice from the dismissal of the instant petition.[4]   Accordingly, Petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is DISMISSED.

**V.   APPEAL ISSUES**

The Court must determine whether to issue a certificate of appealability ("COA").  Under 28 U.S.C. § 2253(a), the district

---

[4]   This Court's review of the state post-conviction proceedings reveals that Petitioner filed his post-conviction relief application on or before January 11, 2002. Petitioner's convictions became final on June 29, 2001, when the U.S. Supreme Court denied his application for certiorari review of the Tennessee Supreme Court's disposition of his appeal. See Carruthers v. Tennessee, 533 U.S. 953 (2001).  Thus, Petitioner is not in immediate danger of losing his right to federal review.

court considers whether to issue a certificate of appealability whenever it dismisses a § 2254 petition.  The statute provides:

> (1)  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B)  the final order in a proceeding under section 2255.
>
> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3)  The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA).

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations

on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require
> a showing that the appeal will succeed.  Accordingly, a
> court of appeals should not decline the application of a
> COA merely because it believes the applicant will not
> demonstrate an entitlement to relief.  The holding in
> <u>Slack</u> would mean very little if appellate review were
> denied because the prisoner did not convince a judge, or,
> for that matter, three judges, that he or she would
> prevail.  It is consistent with § 2253 that a COA will
> issue in some instances where there is no certainty of
> ultimate relief.  After all, when a COA is sought, the
> whole premise is that the prisoner "'has already failed
> in that endeavor.'"

<u>Miller El v. Cockrell</u>, 537 U.S. 322, 337  (2003) (quoting <u>Barefoot</u>,

463 U.S. at 893).  Thus,

> A prisoner seeking a COA must prove "'something more than
> the absence of frivolity'" or the existence of mere "good
> faith" on his or her part . . . .  We do not require
> petitioners to prove, before the issuance of a COA, that
> some jurists would grant the petition for habeas corpus.
> Indeed, a claim can be debatable even though every jurist
> of reason might agree, after the COA has been granted and
> the case has received full consideration, that petitioner
> will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342

(cautioning courts against conflating their analysis of the merits

with the decision of whether to issue a COA; "The question

is the debatability of the underlying constitutional claim, not the

resolution of that debate.").[5]

---

[5]     By the same token, the Supreme Court also emphasized that
"[o]ur holding should not be misconstrued as directing that a COA
always must issue."  <u>Miller El</u>, 537 U.S. at 337.  Instead, the COA
requirement implements a system of "differential treatment of those
appeals deserving of attention from those that plainly do not."

In this case, there can be no question that any appeal by this Petitioner is not deserving of attention, since Petitioner has not yet exhausted his state remedies, and state court proceedings attacking Petitioner's convictions and sentences remain pending. The Court therefore DENIES a certificate of appealability.

Also, with regard to any appeal, the United States Court of Appeals for the Sixth Circuit has held that the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), does not apply to appeals of orders denying § 2254 petitions.  Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases).  Rather, to seek leave to appeal in forma pauperis in a § 2254 case, and thereby avoid the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917,[6] the petitioner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure.  Kincade, 117

---

Id. at 1040.

[6]   Effective January 1, 2005, the fee for docketing an appeal is $250.  See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913.   Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

F.3d at 952.  If the motion is denied, the petitioner may renew the

motion in the appellate court.

     Rule 24(a) of the Federal Rules of Appellate Procedure states,

in pertinent part, that:

     a party to a district-court action who desires to appeal
     in forma pauperis must file a motion in the district
     court.  The party must attach an affidavit that:
          (A) shows in the detail prescribed by Form 4 of the
     Appendix of Forms the party's inability to pay or to give
     security for fees and costs;
          (B) claims an entitlement to redress; and
          (C) states the issues that the party intends to
     present on appeal.

The Rule further requires the district court to certify in writing

whether the appeal is taken in good faith.  For the same reasons

the  Court  denies  a  certificate  of  appealability,  the  Court

determines  that any appeal in this case would not be taken in good

faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P.

24(a), that any appeal in this matter by this defendant is not

taken in good faith, and he may not proceed on appeal in forma

pauperis.


     IT IS SO ORDERED, this 27th day of March, 2006.



                         s/ SAMUEL H. MAYS
                         UNITED STATES DISTRICT JUDGE